IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) ) | |
| v.  ) | CIVIL ACTION NO. 5:11-CV-166 (MTT) |
| ) | |
| TOMMY L. GRIFFIN PLUMBING AND HEATING COMPANY, SANDRA LAWSON, in her capacity as the Executrix of the Estate of Lois S. Griffin and as the Executrix of the Estate of Tommy L. Griffin, Sr., and TOMMY L. GRIFFIN, JR., ) ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

**ORDER**

Before the Court is the Plaintiff's Motion for Summary Judgment. (Doc. 30). For the following reasons, the Plaintiff's motion is **GRANTED** as to defendants Tommy L. Griffin Plumbing and Heating Co. and Sandra Lawson, in her capacity as the executor of the Estate of Lois S. Griffin and as the executor of the Estate of Tommy L. Griffin, Sr.[1]

**I.   Background**

    **a.   Procedural History**

The Plaintiff filed this lawsuit May 2, 2011 against Tommy L. Griffin Plumbing and Heating Co. ("the Company"), Tommy L. Griffin, Sr., Lois S. Griffin, and Tommy L. Griffin, Jr. (collectively "the Griffins") (Doc. 1). Lois Griffin was the only defendant to Answer the Complaint. (Doc. 12). Griffin Jr. filed a suggestion of bankruptcy on May

---

[1] Defendant Tommy L. Griffin Jr. filed a Suggestion of Bankruptcy (Doc. 11) May 23, 2011, automatically staying this action as against him. See 11 U.S.C. § 362(a)(1).  Therefore, the judgment granted by this Order does not apply to Griffin Jr.

23, 2011, staying the action as against him. (Doc. 11). Griffin Sr. died prior to the initiation of this suit, and Lois Griffin, as executor of his estate, was substituted in his place August 22, 2011. (Doc. 16). However, Lois Griffin died shortly thereafter. (Doc. 19). Her daughter Sandra Lawson was named executor of her mother's estate. In this capacity, the Court on January 20, 2012 substituted Lawson as a party defendant for her mother individually and in her mother's role as executor of Griffin Sr.'s estate. (Doc. 26).

The Company itself never filed any responsive pleadings, and the Clerk of the Court filed an entry of default against it on November 28, 2011.[2]

On July 20, 2012, the Plaintiff moved for summary judgment. (Doc. 30). None of the Defendants responded.

### b.  Statement of Facts

This lawsuit arose out of the Plaintiff's issuance of surety bonds on behalf of the Company. As a condition of this issuance, the Griffins executed an Agreement of Indemnity (the "Agreement") with the Plaintiff on February 26, 2008. (Doc. 30-2 at 1, ¶ 2; Doc. 30-1 at 12-20). The Plaintiff subsequently issued surety bonds on the Company's behalf on six different projects. (Doc. 30-2 at 2, ¶ 3). After these bonds were issued, obligees under the bonds as well as the Company's subcontractors, suppliers, and materialmen filed more than 50 claims with the Plaintiff based on work that was either not performed or not paid for. (Doc. 30-2 at 2, ¶ 4). The Plaintiff paid or compromised each of those claims pursuant to paragraph SECOND of the Agreement. (Doc. 30-2 at 2, ¶ 5; Doc. 30-1 at 12). The paragraph states as follows:

---

[2] Though not part of the record in this case, the Court for informational purposes notes that the State administratively dissolved the Company on Sept. 9, 2012. *See* http://corp.sos.state.ga.us/imaging/20108051.pdf.

> [The Company and the Griffins] shall exonerate, indemnify and keep indemnified [the Plaintiff] from and against any and all liability for losses and expenses of whatsoever kind or nature, including the fees and disbursements of counsel, and against any and all said losses and expense which [the Plaintiff] may sustain or incur:
> 
>     (i) by reason of having executed or procured the execution of any Bond or Bonds;
> 
>     (ii) by reason of the failure of [the Company and the Griffins] to perform or comply with the covenants and conditions of this Agreement; or
> 
>     (iii) in enforcing any of the covenants and conditions of this Agreement.
> 
> [The Plaintiff] may pay or compromise any claim, demand, suit, judgment or expense arising out of such Bond or Bonds and any such payment or compromise shall be binding upon [the Company and the Griffins] and included as a liability, loss or expense covered by this Indemnity Agreement, provided the same was made by [the Plaintiff] in the reasonable belief that it was liable for the amount disbursed, or that such payment or compromise was reasonable under all of the circumstances. In the event of any such payment or compromise by [the Plaintiff], an itemized statement thereof sworn to by any representative of [the Plaintiff] familiar with the facts, or the voucher or vouchers or other evidence of such payment or compromise shall be prima facie evidence of the facts and the amount of the liability of [the Company and the Griffins] under this Agreement . . . .

(Doc. 30-1 at 12). At the time it moved for summary judgment, the Plaintiff had paid out $3,510,709.17 in claims-related expenses, including fees and disbursements of counsel. (Doc. 30-2 at 2, ¶ 6). These expenses are reflected in an affidavit given by Michael J. Sams, superintendent of bonds claims for the Plaintiff and custodian of the records on which the Plaintiff rests its case. The claims paid are stated in tabular form, listing the name of each claimant, the name of each obligee, the amount paid to each claimant, and the bond under which each claim was made. (Doc. 30-2 at 3-5).

According to Sams, each claim payment was made in the reasonable belief that the Plaintiff was liable for the amount it disbursed, or that the payment or compromise was reasonable under all of the circumstances.  (Doc. 30-2 at 5, ¶ 7).  The Griffins did not ask the Plaintiff to defend any particular claim, nor did they ever deposit any collateral security with the Plaintiff relative to the claims made.  (Doc. 30-2 at 5, ¶ 8).

The Plaintiff subsequently sent the Griffins a letter, dated March 17, 2011, demanding that the Griffins tender payment to the Plaintiff in the amount of $3,028,405.27 – the losses the Plaintiff had incurred as of that date.  (Doc. 30-2 at 5, ¶ 9; Doc. 30-2 at 18-21).  Despite this demand, the Griffins did not tender payment to the Plaintiff.  (Doc. 30-2 at 5-6, ¶ 10).  This nonpayment, the Plaintiff contends, violated paragraph SECOND of the Agreement.  (Doc. 30-2 at 5-6, ¶ 10).

## II.   Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp*, 281 F.3d at 1224.  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including deposition, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"'If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment.'" *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (quoting *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Cntys.*, 941 F.2d 1428, 1438 (11th Cir. 1991)).  The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case, on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Four Parcels of Real Property in Greene and Tuscaloosa Cntys.*, 941 F.2d at 1438.  In other words, the moving party's evidence must be so credible, that if not controverted at trial, the party would be entitled to a directed verdict. *Id.* "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original).  Where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).

**III.    Analysis**

At the outset, the Court notes that none of the Defendants filed a response to the Plaintiff's Motion for Summary Judgment.  Thus, none of the Defendants have addressed the Plaintiff's assertion of facts.  The Court therefore accepts as undisputed the facts as asserted by the Plaintiff.  *See* Fed. R. Civ. P. 56(e)(2).  Consequently, the Court must decide only whether, based on these facts, the Plaintiff is entitled to judgment as a matter of law.

The Plaintiff contends that the Company and the Griffins breached their contractual obligations when they failed to indemnify the Plaintiff as provided for by the Agreement.  "The elements of a breach of contract claim in Georgia[3] are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."  *Duke Galish, LLC v. Manton*, 308 Ga. App. 316, 320, 707 S.E.2d 555, 559 (2011).  A written indemnification agreement connected with the issuance of surety bonds is a valid and enforceable contract.  *Anderson v. U.S. Fidelity & Guar. Co.*, 267 Ga. App. 624, 627, 600 S.E.2d 712, 715 (2004).  Such an agreement is subject to the ordinary rules of construction, and, absent ambiguity, its interpretation is a matter of law for the court.  *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 556, 583 S.E.2d 220, 223 (2003); *Tuzman v. Leventhal*, 174 Ga. App. 297, 299-300, 329 S.E.2d 610, 613-14 (1985); O.C.G.A. § 13-2-1.  The primary goal is to determine the intention of the parties.  O.C.G.A. § 13-2-3.  If that intention is clear, as where the language of the contract is "plain, unambiguous and capable of only one reasonable interpretation," no technical or arbitrary rules of construction should be applied.  *Anderson*, 267 Ga. App. at 627, 600 S.E.2d at 715.  *See also* O.C.G.A. § 13-2-3.

The relevant terms of the Agreement are unambiguous, clearly stating the parties' intent: In return for the Plaintiff acting as surety, the Company and the Griffins

---

[3] The Agreement contains no choice of law provision.  Given the parties' diversity, the Court must look to choice of law rules in Georgia, the forum state, to determine the applicable law.  *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007).  When interpreting contractual obligations, Georgia applies the law of the place where the contract was made or entered into.  *Gen. Elec. Credit Corp. v. Home Indem. Co.*, 168 Ga. App. 344, 349, 309 S.E.2d 152, 157 (1983).  Moreover, contract remedies are controlled by the place where the action is brought.  *Id.*  The Agreement was made in Georgia and the Plaintiff brought this action in Georgia to enforce its remedies under the Agreement.  Therefore, the Court will analyze the Plaintiff's claim according to Georgia law.

agreed to "exonerate, indemnify and keep indemnified" the Plaintiff from any "losses and expenses" incurred when it "executed or procured the execution of any" bonds on their behalf. (Paragraph SECOND, Doc. 30-1 at 12). They further agreed to be bound by any payment or compromise the Plaintiff made on claims under the bonds, so long as the Plaintiff made the payment "in the reasonable belief that it was liable for the amount disbursed" or so long as the "payment or compromise was reasonable under all of the circumstances." (Paragraph SECOND, Doc. 30-1 at 12). Finally, the Company and the Griffins accepted that an itemized statement of the Plaintiff's payments – sworn to by a representative of the Plaintiff familiar with the facts – would constitute prima facie evidence of the amount they owed the Plaintiff. (Paragraph SECOND, Doc. 30-1 at 12).

Here, neither the Company nor the Griffins complied with these terms, and their noncompliance resulted in their breach of the Agreement. The Plaintiff incurred $3,510,709.17 in claims-related expenses due to its execution of bonds on the Plaintiff's behalf. (Doc. 30-2 at 2, ¶ 6). The Plaintiff's representative, Michael J. Sams, has testified by affidavit that these payments were "made in the reasonable belief that Cincinnati was liable for the amount disbursed, or that such payment or compromise was reasonable under all of the circumstances." (Doc. 30-2 at 5, ¶ 7). The Plaintiff notified the Griffins in writing of the obligation they owed. (Doc. 30-2 at 5, ¶ 9; Doc. 30-2 at 18-21). But "despite [the Plaintiff's] demand, the Griffins failed and/or refused to tender any payment to [the Plaintiff]," the party who had a right to enforce the Agreement. (Doc. 30-2 at 5-6, ¶ 10). Therefore, the Company and the Griffins breached their agreement with the Plaintiff by not indemnifying the Plaintiff for the claims-related expenses incurred. The Defendants have not offered any evidence to

dispute this. As such, the Court finds as a matter of law that the Defendants are liable to the Plaintiff for damages.

To determine the proper measure of damages, the Court must further construe the Agreement. Paragraph SECOND of the Agreement declares that an itemized statement of payments or compromises sworn to by a representative of the Plaintiff who is familiar with the facts "shall be prima facie evidence of the … amount of liability of [the Company and the Griffins] under this Agreement." (Doc. 30-1 at 12). "This language is clear and unambiguous" in its terms: The parties agreed that the Plaintiff's damages should be calculated based on the Plaintiff's production of sworn documentation as to the amount of money it paid out as a surety for the Company. *See Cagle Const., LLC v. Travelers Indem. Co.*, 305 Ga. App. 666, 668-69, 700 S.E.2d 658, 661 (2010) (holding that similar language in an indemnity agreement provided for calculation of a surety's damages on summary judgment).

In support of its Motion, the Plaintiff has submitted Sams' affidavit in which he provides, for each bond issued, an itemized list of claimants and the amount of money the Plaintiff has paid to each. According to Sams' itemized lists, the Plaintiff paid $3,337,659.22 in bonds claims. The Plaintiff paid an additional $173,049.95 in attorney, expert, and consultant fees related to the claims. This totals $3,510,709.17 in claims-related expenses. (Doc. 30-2 at 3-5). As Superintendent of Bonds Claims for the Plaintiff, Sams testified that he has personal knowledge of facts giving rise to the Plaintiff's lawsuit. He also is a custodian of records related to the bonds claims at issue. (Doc. 30-2 at 1, ¶ 1). The Plaintiff has thus complied with Paragraph SECOND of the Agreement. Because the terms of the Agreement are "clear and unambiguous" as to the showing required to prove the amount of the Defendants' liability, and because the

Defendants have offered no evidence of bad faith on the Plaintiff's part or suggested that the expenses were not in fact incurred, the Plaintiff has provided prima facie evidence of the amount of liability the Defendants owe. *See Cagle Const., LLC*, 305 Ga. App. at 668-69, 700 S.E.2d at 661. Therefore, as a matter of law, the Plaintiff is entitled to damages in the amount of $3,510,709.17.

### IV.    Conclusion

As the moving party who also bears the burden of proof at trial, the Plaintiff has presented sufficiently credible evidence to establish all essential elements of its breach of contract claim. Given this production of evidence, and given the Defendants' lack of response to the Plaintiff's motion, there remains no genuine dispute as to any material fact. The Plaintiff is entitled to judgment as a matter of law.

Accordingly, the Plaintiff's Motion for Summary Judgment (Doc. 30), as to defendants Tommy L. Griffin Plumbing and Heating Co. and Sandra Lawson, in her capacity as the executor of the Estate of Lois S. Griffin and as the executor of the Estate of Tommy L. Griffin, Sr., is **GRANTED**.

**SO ORDERED**, this 5th day of October, 2012.

>                S/ Marc T. Treadwell
> MARC T. TREADWELL, JUDGE
> UNITED STATES DISTRICT COURT